Next case call for oral argument is Alicia Lowe v. GMAC. Counsel, whenever you're ready, you may proceed. Okay, please report, Counsel. My name is Lanny O'Hara. I represent Alicia Lowe, the appellant in this case. I'm sure you're all familiar with the facts of the situation, but briefly, Alicia was a minor, went with her boyfriend's father for his marriage in California. While in California, an automobile accident occurs. She's injured. Eventually, she returns to Illinois. We file a suit, and by that time, he is residing, the defendant is residing in the state of Georgia and claims that Illinois no longer has jurisdiction. We contend that there, and that was the trial court found in favor of the defendant, found that there was a lack of personal jurisdiction by the Illinois courts over Tracy Mathis. We claim that that finding was an error, and that he can be found to be, Illinois can be found to have jurisdiction under the Long Arm Statute, Section 209, because he was a resident or otherwise domiciled and said no at the time of the accident. Or, alternatively, there is, he has sufficient contact with the forum that it would not have been due process for the courts to go ahead and exercise jurisdiction. The record before you demonstrates that at the time of the accident, he was working for the Corps of Engineers in Alden. He had the, and as you know, residents and domicile are not synonymous. They're not synonymous. And frequently, when you look at an issue, you're looking at a matter of intent, and we're talking about what was his intent on December 18th, 2005, when the accident happened, because if he's either domiciled or residing in the state of Illinois at that time, he fits under Section 209 of the Long Arm Statute. And in his deposition, he testified that he was living at his sister's house in Staunton, Illinois, right before the transport to California, and it was his intent to return to that residence in Staunton. He was also… To do what? To continue to live there? Well, for at least a period of time. He did not elaborate, but he said it was his intent at that time to return and be residing in the state of Illinois. Does it make any difference when the lawsuit was filed? No. Not under the statute of interest. When the cause of action arose, when the lawsuit was commenced, or in the surplus summons, on either three of those events. Well, I mean, clearly he was in Georgia when he was served. Yes. And he was a resident of Georgia at that time. He was residing in Georgia. In this case, Mr. Mattis has always been a military individual. He was either always in the military, or he had civilian-related military jobs. What did his affidavit say? His affidavit said that he was in the process of moving to Georgia, and he completed his move in January of 2006. He said he had changed a residence card with the post office, but he did not finish his move until January of 2006, which is a month after the accident. Was he in Georgia living at any time prior to the accident? Or had he been there? The affidavit said that he was living with his sister in Staunton. I know that, but had he been to Georgia prior to the accident? I don't know. I mean, it doesn't say anything. It doesn't say anything. It does not say that he was residing in Georgia when it was an accident. To the contrary, there's deposition. He says he was living in Staunton, and he was intending to return to Staunton. And he was working in all these for the Corps of Engineers, and he resigned his position while he did stay out in California for over a month because of his wife's injuries. Is it your contention that the defendants got the burden in this case? Or was it your burden? Once we made the prima facie evidence case, I think it shifts to them. And you made the prima facie evidence case by what? By alleging that he was residing in the state of Illinois at the time of the cause of action arose. I thought you said somewhere in there it said he was a citizen of Illinois. Does that have any significance? The word citizen? In the legal sense? Well, I don't know how it would fit in residence or domicile. For our purposes, we asked if he was actually residing here, or he was residing out of state but domiciled here. And frequently, Mr. Mattis was residing out of state during his career and domiciled in Illinois. Is it a question of intent? How does intent factor in? Well, I think we have to look at his intent on December 18, 2005, the date of the accident, the date the cause of action arose. And at that time, he said he was still employed at home, and he was intending to return to Staunton to live at his sister's house. Now, how long that stay was is not clear on the record, but that was his intent, to return to reside in Staunton. And his affidavit says that he did not complete his move until in January. So, by his own affidavit, he didn't take up residence in Georgia until January of 2006. You're not suggesting that he'd have to get every piece of personal property out of Illinois before he would establish legitimate residency in Georgia, are you? No, he doesn't have to get every piece of property out of state of Illinois to become a resident of Georgia, but in this case… He could have almost all his property in Illinois and still be a resident of Georgia. Under a certain factual situation, sure. If that's what his intent was. But he could have a domicile and a residence, and in this case, Mr. Mathis has always declared Illinois to be his domicile with the military. He's never changed that. Did he change an address card or something? He did say that he made a change of address. Prior to the accident? Yeah. Wasn't that a pretty good indication of what your intent is, where you want to reside? Well, maybe in the future, but not as of the date of December 18, 2005. What else would he have to do? If he's given the post office a change of address card? Well, I think he would have to show intent to actually do that. I think if I forwarded my mail on somewhere else, it doesn't mean that I would actually reside in Illinois or intend to reside there. But in this case, he had an Illinois driver's license. He was under the jurisdiction of the Illinois Courts already because of a divorce decree in the Coopan County. They had continuing jurisdiction over them to enforce the terms of that policy, and he had a bankruptcy pending in the Central District of California. Now, the record is not clear as to when he got his discharge. He couldn't recall if he got his discharge in bankruptcy before or after the California accident. But nevertheless, even if he had it shortly before the accident, the federal courts in Illinois would still be exercising jurisdiction over him over the bankruptcy. And once again, the Coopan County courts already had jurisdiction over him due to this divorce decree. He likewise had a mortgage on property located in Coopan County. He quit claiming his interest back in May, but he continued to hold a mortgage until it was refinanced after his wife remarried, which was after the accident, considerably. And once again, he has never stated that anything other than his affidavit that he intended to reside in Georgia, and that he's never said anything about his domicile. He's never negated that the Illinois was his domicile or that he ever changed it, other than in any meaningful manner, after he declared it with the military. And then even, once again, even if he's not domiciled here, you could still find that the courts had jurisdiction because of his ongoing contacts with this forum. And once again, there are many of the same things we just discussed, including the ongoing obligations of his divorce with the continuing jurisdiction of the Coopan County court. He has the mortgage, which is an obligation on property located in the state of Illinois. He had his employment on the day that the accident was in all Illinois. He had an Illinois driver's license that he was operating on. Most jurisdictions require you to transfer your driver's license to that state once you become a resident of that state. They give you two or three months leeway time, though, don't they? Like Illinois gives you 90 days or something? Yes. But when he took his deposition two years later, he still had an Illinois driver's license. He has never changed his driver's license. That's clear in the record with his answers in the laboratories and in his deposition transcript. He has never changed his driver's license. Was he doing work in Georgia? He was a civilian contractor for the military. He helped veterans, I think. I forget the exact title, but he wounded veterans and came back to do some health processing and was assisting them. But he was subsequently moved from Georgia to West South Carolina. And that's the whole issue that comes to the state. It's their contention that we need to travel to California to file a lawsuit against them in California where no one resides, none of the witnesses reside there. And that's why under a minimum context, I think it's appropriate for this court, the Illinois courts, to exercise jurisdiction. Because the only alternative would be to go to California where no one resides. What about Georgia? He's not in Georgia. Can we go to South Carolina or wherever he is now? This guy didn't move constantly because of his military connections, and that's why we get back to he didn't move, but his driver did. You could have sued him in Georgia, though, right? Where he was serving. He served in Georgia because he was living there at that time. Right. We did. Right. And you couldn't file the lawsuit in Georgia? Could we have? We could have, but we didn't feel it was appropriate to do so. We felt that he purposefully directed his contact towards Illinois, towards Alicia Lau, inviting her to come to California with the intent of returning her to Illinois. And it's just a hardship or a burden on him to ask him to defend a lawsuit in the state of Illinois when the injury arose due to that relationship that originated in Illinois. And in this case, we also know that he frequently, he is a good father here. I have to give him credit. He travels from Georgia to Illinois on a frequent basis to watch his kids play high school football and other visitation, so he's frequently here. And it's not a burden on him to have to defend in this case. In this case, we made arrangements to take his deposition, even though he was residing out of the state. We did it by telephone. But when you do the whole balance under the minimum contacts test, which is whether it would be a hardship or a burden placed on him to defend in Illinois, it would have to be a much greater hardship to make him defend in California than it is in Illinois. He regularly travels here. He was already in the jurisdiction of the divorce court up in Macoupin County, so for the Madison County Supreme Court to exercise jurisdiction just is not a significant burden. So it's our belief that the intent was that he was a resident at a minimum on December of 2005 when the accident occurred. And once again, he's never negated that he's admitted in his deposition that he filed a declaration that his domicile was the state of Illinois when he was in the military, and he's never changed that. Two years later, he's never changed his Illinois driver's license. So all of those factors, I think, commit us under the law and statute, where alternatively, I just think the contacts and the nucleus of the relationship between the parties being out of the state of Illinois allows the court to exercise jurisdiction under due process. I mean, jurisdiction under minimum contacts, under due process. Now, you said that he filed that when he was in the military, but he was no longer in the military. I understand that, but, I mean, if he's no longer in the military, why would he file anything? What good is it? To tell the military he no longer lives, that he no longer intends to reside in Illinois? Well, I think he would have to change that for his military pension. He would have to change that for, he's got military bank accounts. This was all brought up in his deposition. He's got bank accounts, which float around. It's a military-based bank account. He had, he filed his declaration for there, and he's got a pension from the military, which I think he would require to change that for. And once again, if he seriously intended his residence to be in Georgia, he would have changed his Illinois driver's license from Illinois to Georgia. I, once again, I think it's all pretty well laid out in the briefs. If nothing else, I'll relinquish my time. Thank you, counsel. Counsel? Thank you. Your Honor, Ted Tancoke on behalf of the Emily defendant, Tracy Mathis. May it please the court, counsel. Your Honor, I know that the court's standard, Your Honors, I know that the court's standing rules prefer not to have extensive recitation of the facts unless it's necessary in the case. With leave of court, I would like to focus on some of the key facts, given that this issue really is inherently chronological. The court will note that the record clearly establishes that in March 2005 was Mr. Mathis' last residence at his prior marital home in Mount Olive. But by the end of May 2005, his divorce was finalized, the judgment of dissolution was entered. And pursuant to that divorce, he transferred his interest in his prior home to his ex-wife and reported a quitclaim deed on June 13th of 2005. So that was reported in the County and received by his ex-wife. So again, that window of March 2005 to June 2005, the steps toward the end of his prior marriage, relinquishing any legal rights or interests as Illinois would see it in real estate in Illinois. Then he did testify that the last few months of 2005, he lived with his sister in Staunton. And again, I think since we're going to approach questions of intent, what we're starting to see, I believe, in the chronology is the process of winding up his life with his ex-wife here in Illinois and in Madison County and in Macoupin County. And then moving forward, because clearly he had plans that manifested themselves in December of 2005, we come to the things that tee up this case. Where he left on December 15th, he left for California to marry his new wife. His deposition makes very, very, very clear that he had no intent to return to Illinois. His intention was to live in Georgia. This was as of December 15th. The plaintiff did travel with Mr. Mathis and his family. But I want to disabuse the court of the idea that Mr. Mathis was the one who sort of recruited the plaintiff to go with. Clearly, the circumstance that she traveled with the family was that she was dating Mr. Mathis' son. So Mr. Mathis, in essence, what his clearest testimony is, is that he was making sure it was okay for her to travel with the family. But again, the relationship that gave rise to her traveling was the fact that she was dating Mr. Mathis' son. December 15th is the day that they traveled from Illinois, flying out of St. Louis. The accident itself was three days later, December 18th. Then we flash forward the next few weeks to the extent, if I could back up, his intent at the original, prior to the accident, his original intent was to fly to California, be married. He was going to stay there with his new wife for a few more days for a honeymoon. Then the kids were going to fly back to Illinois without Mr. Mathis. December 18th, the accident happened, and that pretty much changed everybody's plans. Were they going straight from California to Georgia? My understanding is the original plan, as of the time they left Illinois, was that they were going to get married in California, have a few days' honeymoon, he was going to come back to Spaunton and pick up the minor belongings that he had left with his sister, and then go straight down to Georgia. My understanding is, as it happened, because the accident was... But he had a round-trip plane ticket, I presume. I'd be speculating, Your Honor. But what actually happened was the accident occurred December 18th. The plaintiff was obviously injured. Mr. Mathis' new wife was also injured. So his plans changed, and he ended up staying in California for these additional three weeks while she was hospitalized. And then it appears that he did, in fact, go from California straight to Georgia, and he had completed his move by his affidavit January 20th, 2006. So if his original plan was to go back and pick up the trucks and tools and clothes from his sister's house in Spaunton, as the events developed, he didn't actually do that until January 27th. So it appears that, in fact, the accident caused him to hold over in California, proceed straight to Georgia, and then duck back to Illinois for 24 hours to pick up his residual property that he had left from staying with his sister. Now we flash forward three months after this period in December of 2005. The plaintiff filed this action order, originally purely as a declaratory action against the insurers, to sort out liability coverage, UIM, UM benefits, and so forth. So you say it does make a difference when he was served, or do you? It is one of the criteria, Your Honor, under Section B of the long-arm statute, which is the time the cause of action arose, the time the lawsuit was commenced, or the time of service. So the fact that service was obtained as the very last stage of that, I believe October 2nd, 2006, when Mr. Mathis was served in Georgia. But I think it is worth noting that... That was an amended count just with your client on the D.J. action that was already filed, right? Absolutely, Your Honor. Is there any relevance to that? Only insofar as it stretches things out, because, again, the plaintiff is the master of her complaint. The cause of action was originally asserted March 3rd, 2006, purely as an insurance, as a declaratory action to sort out insurance. Eight to nine months later, or eight to nine months after the accident, but about six months from March 3rd to August 31st, when the amended complaint was to bring in the direct action, the direct liability action against Mr. Mathis. So there is a substantial delay there. See, Michael, there are two separate and distinct causes of action to make. One is a contract action coverage, and another one is the tort action, right? Understandably, Your Honor, I wasn't privy to that history of the case. I know it does trouble me in the sense that in the normal course, the coverage... But you're not alleging that there's any significance to him getting served while he was, by all parties, a resident of Georgia the day of the service? In the sense of under the statute, whether there are three timing criteria to the long-arm statute, we would submit that it is absolutely significant in that his residence is established as of the point of one of the criteria under the statute. Enough of the record and the facts and the procedural history then work their way backwards from that to confirm that the summoned state and residence in Georgia are effective even as to December. So turning to the pleading itself, by the time Mr. Mathis was pleaded into the case, it's worth noting, we believe, at whatever burden the court is going to adopt, because we do know that there are opinions from the Fifth District that do seem to wrestle with whether it's prima facie for the plaintiff or whether it's preponderance of the evidence. Even at the prima facie level, though, we would point out that the amended complaint is, in fact, inconsistent. It self-contradicts itself, and the allegations actually can be disregarded completely as a pleading matter. By that, we would direct the court's attention to count one paragraph for Tracy Mathis is an individual who, at the time of this occurrence, i.e., December 18th, was a citizen of the state of Illinois. And upon information and belief, residing in Madison County, Illinois. So that's paragraph four, count one. Paragraph two of count two, then, is entirely self-contradictory. The defendant was, at the time of the occurrence, a citizen of the state of Illinois, but upon information and belief, no longer resides in Illinois. So to the extent that the complaint is a document that starts the prima facie burden, the two allegations with respect to Mr. Mathis' residence are, on their face, self-contradictory. What's the status of the D.J. action? Your Honor, I confess I'm here on a jurisdiction issue. The D.J. status was handled by another attorney at our firm. Is it still pending, or would you even know that? I'm afraid I don't know that, Your Honor, compared to the jurisdiction question. So at any rate, we have the contradictions as to Mr. Mathis' residence, whether he does or does not reside in Illinois. The second thing to note is the fact that the complaint pleads citizenship, which is actually not even a criteria under the long-arm statute. Or it is referenced in the long-arm statute section A, which is the specific jurisdiction, the enumerated acts giving rise to the identical cause of action portion of the section. The section of the long-arm statute that plaintiff has always relied on is the general jurisdiction section B, which citizenship is not even a criteria. It's domiciled or residence. Do you think there's any distinction between the two, domiciled or residence? Any distinction between the two, domiciled or residence, there is. There's a fundamental distinction. The case law tends to suggest they're similar but in no way synonymous. And for that, what I did was reference to Black's Law, the ninth edition. Domicile is the place which a person is physically present but which the person regards as home. A person's true, fixed, principal, and permanent home to which that person intends to return and remain, even though currently residing elsewhere. Domicile, then in the case law in Illinois, the subjective intent controls. And it occurred to me in thinking about domicile as a phrasing or as a maxim, a domicile is home is where the heart is. It's the subjective perception of wherever I may be at, where I may be living, I may be temporarily residing somewhere else. Domicile is my home. That is where I intend to go back to. That is where my life is. On the other hand, following up with your honor, residence is distinguishable in the sense that it's purely objective. And again, this is Black's Law, ninth edition. The act or fact of living in a given place for some time, a place where one actually lives, is distinguished from a domicile. So we believe that distinction is important and that domicile is where you may physically be, but that suggests the subjective intent element, home is where the heart is, is what controls as the domicile. Residence is purely objective. Wherever it is a person happens to be living, a given place, a given time. So again, the maxim that I came up with that is home is where you hang your hat. The idea being that you can have temporary residence. I certainly had temporary residences in the military, even though my domicile was always going to be back here in Illinois. So the statute, by phrasing it in terms of domicile, first and foremost requires Mr. Mathis's subjective intent to control. And so the purpose of establishing a chronology is to make clear to the court that by December when they took this trip, he had already renounced or abandoned Illinois as his domicile. If he had an intent to go away from Illinois after he got married, then his intent to be in Illinois, though he was in California getting married, would have been during that period of time before he left California. See, how do you draw that line? I intended to do it in the future. I think, Your Honor, the act of this will be my domicile is a renunciation or a repudiation of past domiciles. After my marriage. So I think, is that not the bright line? After my marriage, I intend to live in Georgia. Your Honor, I would respectfully submit that the bright line would be leaving Illinois. When I decide, like three days before after I get married, I'm going to live in Georgia from that three days on to the marriage, then back to Georgia. I don't think in this case, Your Honor, that it could be a bright line question of intent given that all the prior factors suggest the developing intent. The fact that, again, he had gotten engaged and they had discussed, okay, I will move after the wedding, I will move with you to Georgia. The affidavit indicates before the trip was taken, he had already put his change of address on file to forward to Georgia. So I think the building intent to repudiate Illinois as a domicile is manifested before the December 15th date of departure and is manifested in the events leading up to that. I don't think it's possible to say that he would have had a domicile up to December 15th given that his intent wasn't to come back. When was he domiciled in Georgia? His testimony, Your Honor, is that he had completed his move January 20th, 2006. So what we do appear to have is a certain gray area where he had been repudiating his domicile in Illinois and subjectively, I will be living in Georgia. So we do have apparently this transitory period. But again, the domicile inquiry is a subjectively controlled inquiry. Is there any significance, opposing counsel seems to think so, the fact that he didn't get his driver's license changed to Georgia? That is in the record. It's in his deposition testimony, Your Honor. His testimony was that given that his wife, new wife, was in the military, that there is some sort of savings clause that the spouse of an active-duty military member does not need to change their driver's license. That is his deposition testimony. I confess I was not able to run that to ground, but that is his deposition testimony, that there is some sort of savings clause out there somewhere, somehow, that the spouse of an active-duty military member, given potentially transitory lifestyles involved in that, that he was excused from changing his driver's license. That is his testimony. I think getting back to my argument, my discussion, I guess you'd call it, when I retire, I intend to move to the Cayman Islands. Now, I'm going to equate retire with marriage, moving to Georgia. So when is my domicile changed to the Cayman Islands? After I retire? The day I retire? Or 10 years from now? Your Honor, my belief is that your domicile, or in this case the domicile, would change the moment you left Illinois, the moment Mr. Mathis left Illinois, with the intent never to come back. He came back to get some goods, didn't he? Was he going to come back and get the rest of his belongings, tools, and something else? I thought that was in the fact. Absolutely. Absolutely, Your Honor. But I don't know in any way, shape, or form that that could establish domicile in the sense that, again, where the person intends to return, that's a purely clerical act in the course of moving. Certainly, anybody who moves to another state, they have to come back because they can get their stuff in a storage locker on a truck as they move to Georgia or some other foreign state. So then the other part of the statute, admittedly, is residence. And again, the last day of his residence, the act of living in Illinois, was also December 15th. Temporary, when people move and move to another state, whether it's for a job or for marriage or whatever, yes, there are always, or a lot of times, transitory points or periods from the act of leaving one state and taking up residence. Had the defendant personally been to Georgia prior to the accident delivering some of his personal property? It's not on the record, Your Honor. So we don't know whether he even set foot in Georgia at the time of the accident? We don't have a basis to say that's on the record. Does that make it kind of difficult to establish domicile if you've never been there?  So to the extent we're still in the long-arm statute, we're also, some of the things we've heard in the argument is a little problematic because it's not exactly clear. Go ahead. Finish your thought. It's not exactly clear, even from the list of factors that the plaintiff is relating, whether all these, either under the long-arm or under the due process clause, whether it's specific jurisdiction to contacts with Illinois for purposes of the core of this case, or whether we're talking about general jurisdiction, Mr. Mathis has systematic contacts. So I think it's the failure of the argument to specify whether we're even talking about specific or general jurisdiction. For the foregoing reasons, we respectfully request this Court to affirm the circuit court, which quashed service and denied reconsideration, such that Mr. Mathis is dismissed from this case. Thank you. Thank you, Counsel. Counsel, give you an extra minute or two also. Just very briefly, the due process clause only comes into existence if we find that he is not a domicile or residing there on the date of the accident. And if we're going through this argument about whether or not he's a domicile or residing there, he's clearly got sufficient minimum contacts to not offend the due process clause. Because he has overwhelming contacts with this forum. He grew up here. He's lived here the vast majority of his life. His kids are here. He's mortgaged property here. He's got a divorce decree in Macoupin County. He's got a bankruptcy in the Central District of Illinois. So even if he's not residing here and even if he's not a domicile here, due process is not offended by asking him to defend here. And I just want to make sure that the record is clear. We have established his residence here on the date of the accident. And it's page 29 of the defendant's appendix. It's the deposition transcript. And he's asked, what were you going to do? What was your intention of doing? And he says, I was going to stay in California a couple of days. And then she was going to go to Georgia. And I was going back to St. Louis. And then he's asked, where were you going to live? I was going to live at my sister's house. That's on page 29 and 30 of the appendix. How long was he going to live at his sister's house? Does it say in there? It doesn't say. It doesn't say. But the point being is, residence, if it's not surrounded with domicile, even if he was domiciled in Georgia, which we deny that he was, but even if he was domiciled there, he was still residing in Illinois. He had not decided to move his residence to Georgia. He clearly intended to come back and live in Illinois. He was still employed by the Corps of Engineers on the date that he was injured. His residence, I think it's a higher standard to prove domicile of his residence, because residence can be proven just by your mere existence in that court. And clearly he was. He was here. He was intending to return here, even if it was temporary. The statute doesn't say that you have to be there for 90 days or a year. It just says if you're residing in the state when the cause of action arose, then we have jurisdiction of the law in the statute. And the statute is very clear. It says the cause of action is a natural person domiciled or resident within the state. When the cause of action arose, the action was commenced or process was served. So it could be either one of those three factors. It doesn't have to be a combination of them. And clearly when the cause of action arose, it was his intent to return to Illinois and continue his residency, even if it was for a day, even if it was for two weeks. He would have still been there. Once again, I think he's domiciled in Illinois also. But even if he's not domiciled, even if he's not a resident, his contacts are overwhelming. And to say that this litigation should move out to California where there's no contact with anybody other than a honeymoon, that offends due process. To make this gal, you know, her parents have a medical claims bill. They never stepped foot in California, yet they're required to transfer to California to prosecute their medical bills claim. I think that would be offensive to due process. So I think there's overwhelming contacts. And I think this court just needs to vacate the court's order and find some personal jurisdiction that doesn't exist over Tracy Mathis. Thank you, counsel. We appreciate the briefs of both counsel and the argument.